The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and His Honorable Court. Good morning. Please be seated. The case before us this morning is Docket Number 12-1170, Suprema v. ITC. Mr. Wu, when you're ready. Good morning, Your Honors. May I please depart? My name is Daryl Wu and I represent the appellants in this matter. At issue in this case are Suprema's fingerprint scanners and SDK. The commission below determined that none of these products directly or contributorily infringe the filter of what happens. Suprema imports the scanners and system integrators in the United States attach them to computers like you would attach a printer to a PC. The software alleged to run Claim 19's method is run on the PC. Nothing is added to the scanners. Three of the four combinations of scanners, computers, and software programs accused of infringing Claim 19 were found by the commission not to infringe. The common element is the scanners and that makes them the perfect example of a stable article of commerce. You can add Suprema scanners to any customer's software and the scanners will run the same way. The commission, in fact, expressly found that the scanners were capable of substantial non-infringing uses. The commission erred in finding that the Suprema staple article scanners are articles that infringe under 337. As the commission itself has ruled, 337's articles that infringe language refers to the status of the articles at the time of importation. As imported... Mr. Wood, this is a trade statute and its purpose is to protect owners of the United States patents. The commission found that there was direct infringement by Mentolix and that Suprema intended to induce. So, because this is a trade statute, can't we dispense with some of the minor technicalities of the patent law? This is a trade statute. Your Honor, I agree with you that it's a trade statute. The language of the trade statute, though, is written in terms of articles that infringe, not acts that lead up to an infringement. And articles that infringe are not staple articles. My clients imported only staple articles. Nothing transformed them. 271B is inducement. 271B is inducement, yes, Your Honor, but that statute is written in terms purely of conduct, not of articles. 271A and 271C refer to articles. But A and C also deal, are really conduct, right? It's whoever sells, uses, makes. It's not articles that infringe. It's a person engaging in infringing conduct. Is that not correct? Well, the conduct is with reference to articles. In 271A, it's articles that directly infringe. And in 271C, it's non-staple articles that are especially made for an infringement. So while both statutes, 337 and 271, address conduct, they also are directed to articles that are the object of the conduct, except for 271B, which is written solely in terms of conduct. But 271B also contemplates use of articles for committing 271B infringement, too, right? Well, I'm not saying that you cannot use an article as part of your inducement of infringement. All I'm saying is that under 337, which is written expressly in terms of articles that infringe, the articles have to infringe. And under 271B, yes, you can be liable for patent infringement in a district court for the acts that constitute inducement, but they are not tied at all to whatever articles you may or may not be importing or may or may not be selling. Mr. Wu, what do you think articles that infringe means at its outer limits? At its outer limits? Does it cover an article whose only use is to carry out a method, a claimed method? I think an argument can be made for that, but that is not an issue that is here because we have nothing but staple articles. Tell me then what the outer limits are. The outer limits in our view, Your Honor, within the confines of this case are articles that either directly infringe or contributorily infringe. What does it mean to say an article infringes? That's not 271's language. So obviously 337 refers in some way or other to 271, and the question is whether the commission here has taken a term, articles that infringe, that is not exactly what anything in 271 says and given a reasonable translation of that shorthand into something in 271. So why is their translation unreasonable? Courts have long held that under 271A, an article that infringes is an article that practices every element of a patented invention. There's no pattern of usage in the history of patent talk in cases or elsewhere that uses a phrase like an extremely common shorthand, infringing article, articles that infringe, to refer to either articles that play the 271C role or that play a particular role with respect to a method claim? Not in terms of staple articles that may accompany an inducement of infringement. There are no cases that directly or even indirectly talk about the issue that we're talking about today, which is whether or not under 337's article that infringes language, a staple article that was only incidental to the inducement, if at all, connected to it, can be an article that infringes. Are you saying an article infringes a patent only if there's a claim to the article, a product of a composition claim to the article? No, what I'm saying is that a staple article is not an article that infringes. When you talk about staple article, you're talking about 271C. 271B or A don't deal with staples. But we have a method claim here, right? Yes, Your Honor, we do have a method claim. So you're saying the article doesn't infringe because there isn't a claim to the article. Well, that's also true. In fact, that's what the commission found, that the article here, the scanners, do not infringe either contributorily or directly. And the only infringement that is found is as to the combination of the addition of the scanner to a computer that runs software. The software that actually does the method is on the computer, not on the scanner. And that is only run in the United States after importation, if at all. Is it important to you that 337 doesn't use the word use that appears in 271? I'm sorry? That 337 refers to importation, sale, sale after importation, but does not refer to use. I believe that is significant, Your Honor, because if you look at the pre-1988 formulation of 337, it was written in terms of unfair acts. Not in terms of articles that infringe. That was changed in 1988 to refer to articles that infringe. And the formulation that was changed was with respect to importation, sale after importation, well, there's one other, of an article that infringes. So, yes, I agree with you, Your Honor, that the fact that use is not any longer part of 337 is important. Can I ask you your focus on the time of importation and ask you to think back to the period from 1988 to 1994 before 271A had import added to it? To ask, I guess, the question most specifically, focus specifically on the sale before importation language of 337. Under what circumstances would an object sold before importation infringe under 271, any part of 271, at the time of importation? There's no making use, sale, or offer for sale in the United States at that moment. Well, it's an article that is made or manufactured that performs all the steps of a- That's not what 271A says. It says those things have to be done in the United States. Well, we're talking about- A translation of a loose term into something more precise. Well, the question is why is this outside the range of permissible translations of something that is on its face a loose shorthand? Well, that's because A and C are directed to things as opposed to conduct. There's no reference in 271B to anything but the conduct of inducing someone to infringe. In fact, you can induce someone to infringe without selling or making or using any article at all. You can instruct somebody on how to use something and thereby induce somebody to infringe. Well, suppose then we had a situation in which there were instructions together with the hardware that exists here. At the time of importation, the article was combined with instructions telling people to infringe. Would that be within the statute? Well, that's not what we have here, Your Honor, but- Yeah, but you've got to answer a hypothetical. I understand what you're trying to say. If someone were to package up an entire system that included all the instructions and- Which is what happened in some of the past commission cases. Well, yes, which were also decided under the Nexus test, which is no longer the test, but besides that, Your Honor, if it's all packaged up and it's a method claim, and the method claim still doesn't happen until someone turns it on, I would argue that the method isn't practiced until it's in the United States. See, I have difficulty distinguishing that hypothetical from the one involving an article with no substantial non-infringing uses. It seems to me in both of those instances it's true that the actual direct infringement doesn't occur until later, but there are also situations in which, by looking at the article itself without gathering extrinsic evidence, you can tell that there is or will be infringement, whereas this case is somewhat different in the sense that you have to look beyond the article to determine whether there will be infringement. The sale to Medilex ultimately may involve infringement, but the sale to other people will not. Right, I think there is a distinction here. I think the hypothetical that Your Honor poses is a closer question, but here we don't have that situation. The stable articles are just that. They are stable articles at the time of importation, and they never change. The software that is run to bring the system within, allegedly within Claim 19, is done on the computer, and that only happens... Do we know what percentage of the imports of the hardware go to Medilex and what percentage go to other people? I don't have that information. All I know is that the complainants in this case accused four such combinations of systems. Three of the four were found not to infringe. Counselor, you've argued to us the relationship of 271 to 337, and you've also referenced legislative history. So, are you saying that the statute is ambiguous on its face? I am not, Your Honor. Why would you argue legislative history to us if that's the case? Well, that is a backdrop, and in part to respond to Appleby's arguments about the legislative history. I don't think it's ambiguous at all. Well, then let me ask you, does 337 define what articles that infringe means? No, but that doesn't make it an ambiguous statute. The 337 itself does not provide that definition, correct? That's correct, Your Honor. Does 271 provide that definition? It does not. So, are we starting off here with an ambiguous statute? And the real question here is whether the commission's interpretation of that statute is reasonable or not under Chevron doctrine. It's common for statutes not to define every single term in the statute. And this court, using standard tools of statutory construction, can accurately construe those terms on the face of the statute without reference to Chevron. But once we take that road and we're using those tools, dictionaries, and even going further and looking at other statutes and arguing the relationship back to the statute at hand, or even going and looking at legislative purpose, doesn't that all point to ambiguity? No, it does not, Your Honor. It's common for courts to construe terms in a contract or in a statute and do that using the standard tools. Chevron deference only gets involved when the court is unable to do that function. In this case, the court is able to do that function, and in fact, so did the commission. The commission did that in certain electronic devices. Assuming we would find that the statute is ambiguous, what's your argument to the argument that the ITC determination was reasonable? The interpretation of 337 was reasonable. The interpretation is not a reasonable one because it's not grounded in the statutory language. In fact, it runs counters in the statutory language, which requires articles that infringe. It is a limiting term, not a descriptive one, and the way that the commission wants to read the statute actually eliminates the phrase that infringes and turns it into something like used to infringe or acts that might infringe and involve an article. That's not how the statute reads. If Congress had wanted to include liability and articles that don't infringe and encompass 271B expressly, they could have done that. They could have imported 271B and made reference to it. They could have written. Isn't that where the ambiguity lies? I'm sorry? I said, is that not where the ambiguity lies? Congress could have also, when it passed at the different stages of different trade acts, they could have also expressly said the IPC would now rely on theory of inducement in order to find infringement. Well, that is not necessarily the case, Your Honor, because the language is written in terms of articles that infringe, and Congress could well have decided to do it differently. Is it your thought that the word articles is not ambiguous, especially in the context of a claim to a method? No. An article is an article. That's very clear. And I think what we're struggling with here is that the claim in this case is a method claim. That is only practiced in the United States after importation. So as you pointed out earlier, Your Honor, it's a trade statute. We're talking about articles that infringe at the time of importation. We have to look at the article, right, rather than the article coupled with some other conduct by the importer. Right. You need to look at the article. Again, the change in the statute in 1988 was a change away from acts of the importer to articles that infringe. So, yes, you look at the articles that infringe. I'm not sure I answered your question. So is it your view that the 1988 amendment restricted the scope of what the IPC can do in terms of blocking imports? No. It changed the scope. It didn't necessarily reduce the scope. It's an apples and oranges kind of comparison. What if we were to believe that the IPC did have an established practice of holding induced infringers viable and blocking those type of articles under a 271B theory before 1988? Then I guess it would be your view that the 1988 amendment necessarily restricted the powers of the IPC. Well, no, Your Honor, because the pre-1988 statute as written had an additional limitation, which was unfair acts that could include inducement, but there was an additional requirement of substantial injury to the U.S. industry. That was taken away and replaced with the importation of articles that infringe. So, again, it's an apples and oranges comparison. But in terms of 271 theories, you would say that the 1988 amendment retained the 271A and 271C theories, but removed and excluded the 271B theories. Is that right? Yes, Your Honor, because the focus was changed from the actions of the actor to the articles that infringed. And it's totally consistent with the whole scheme of enforcement of 337, which is to enforce the Customs and Border Protection Agency. How are they going to define the hidden intent of a person importing a staple article into the United States? You could have two different importers. One who was, in this case, who is alleged to have induced by supplying an FDK and helping, somehow helping the alleged direct infringer integrate public software into this system while not knowing of the patent that's being infringed, but supposedly being willfully blind to that. Customs does that all the time in the false statement cases. They look at intent. That may be true, Your Honor, but they don't, but they can't, no one can certify, in this case, the order says... But you asked a hypothetical or rhetorical question. How can Customs define intent? They do it all the time in the criminal case. They do it in criminal cases, yes, Your Honor, but in this case, they're looking at two articles that are identical. They're staple articles of commerce, and the exclusion order in this case says that articles that infringe are excluded. Well, if the exclusion order were written more precisely to say no discretion on Customs part, it certifies the lack of any knowledge of downstream use to practice a patent. Well, I don't think that really helps us in this case, Your Honor, because no one could ever make that certification, because according to the Commission's view... They can certify about what they know. Well, no, in this case, they would have to certify what they don't know, because... I'm sorry, you can do that, too. I usually know both what I know and what I don't know. Well, no, Your Honor, you can't not know of the 344 patent. You can't say that you don't know about the 344 patent, because the minute you say that you don't know about it, you don't know about it. I'm sorry, the certification would be, I'm not importing this. I have a customer. I have no knowledge that that customer is going to put it to a use under the 344. And how could I ever be sure of that, number one? And, again, the way that my client was charged in this case, it was charged under a willful blindness theory, which had the liability be based on not knowing of the 344 patent, but somehow being willfully blind to it. Isn't it a fact that the Commission found not only that there was no actual knowledge of the 344 patent, but there was no actual knowledge of how Mentalics intended to use the product? In other words, that your client had no knowledge of the fact that the software was going to be manipulated in such a way that it would actually practice the method. That is true. Then, with respect to this remedy concept that puts you in a position where even if you certified truthfully, you could be subject to contempt if the Commission felt that you were willfully blind. That's correct, and that's another problem with this particular case, rather. The willful blindness in this case was based on four unreasonable assumptions. One, that somehow my client acquired this foreign version of the other side's product to avoid knowing of the patent numbers, but none of the products were marked, so there's no way that that could have been any avoidance. The Commission points to copying the patent features, but there was no copying of the patent features. My client's products were found not to directly or contributorily infringe. They successfully designed around it. They point to the failure to hire counsel, and there was no reason to hire counsel. In April of 2008, my client contacted a Korean lawyer, never heard back from them, decided in September to do their own search. They found one patent, the 562 patent, didn't find the 344, didn't know about it, but there was no reason to go any further. Why? Because they concluded correctly, the Commission agrees, they didn't infringe the 562. The 562 itself, had they read the whole thing, didn't mention the 344 patent, only applications. So why would you trace down an application on a patent that you already concluded you didn't infringe? And then there's a temporal impossibility where the alleged wrongdoing that we're supposedly blinding ourselves to is Mentallix's infringement, the combination of the scanners with some software program that we don't know about, and then somehow we're supposed to be undertaking these acts prior to that with some future foreknowledge that somehow Mentallix might infringe the patent. That isn't willful blindness. Iran, I see that I'm into my rebuttal time. Why don't we hear from the other side. Thank you. Now the other side, we've got three people arguing, and you've divided your time, 13, 12, and 5. We're going to run the clock for each of you individually, hoping for a little self-policing in that regard. So why don't you proceed, Mr. Cheney. Thank you, Chief Judge Prost, distinguished judges, may it please the court. My name is Clark Cheney, and I represent the commission in this matter. I believe that the court could have... Could I ask a question about the past commission practice? Because I'm struck by your claim that this is consistent with what the commission has done in the past, and I don't see that. I do see the commission in past cases of having issued exclusion orders based on products that have no substantial non-infringing uses. I see cases where the commission has said if it's imported with the instructions telling you to infringe, that that can be the subject of an exclusion order. I do not see any cases that go beyond that, and I believe that your description of the Young and Bakelite case is suggesting otherwise not correct. Which case do you rely on that goes beyond what I just described, that is the most substantial non-infringing uses and imported with instructions? I think the Bakelite case is consistent with the commission's position. In the Bakelite case, the inducement relates to trademark infringement, not to patent infringement? There is a finding in the Bakelite case involves method claims and claims to a specific apparatus, a cigarette holder and pipe scents. So there were actual apparatus claims at issue there. That may be, but the part that you quote relates to trademark infringement, not patent infringement, correct? I disagree. My reading of the case may be different, Your Honor, but I think what the court was saying in Bakelite was we have a patent owner who has a cause of action for the sale of these pipe scents and cigarette holders in the United States. But the appellant in that case argued that the mere importer shouldn't have to proceed against the sellers of those items, that there should be a remedy that could occur at the border. And the commission, and then this court's predecessor, adopted the reasoning in the Supreme Court's Henry v. 1815. Was there a case where there were no substantial non-infringing uses? That wasn't relevant because it was an apparatus claim. So the items being sold in the United States met every element of the claim, but there was no way under the current patent law as it existed at that time to reach the importer, because the importer was not directly infringing. At that time, infringement was only made to the seller. Was the article being infringed directly in the print of the device patents? It did, and then the question was, could you find liability? My question is, can you point me to any past case where the commission went beyond the situation where there was direct infringement of the article, or the article was imported with instructions to infringe, or there were no substantial non-infringing uses? I'm not aware of any. I will never be able to point to a case involving inducement where there was not direct infringement, because the commission— No, that's not going to answer my question. My question is, in the past, all of these cases that you cite, it seems to me, involve situations in which there's inducement that could involve no substantial non-infringing uses or imported with instructions. Is that not accurate? I don't think so. I direct your honor to the chemiluminescent devices case decided by Judge Lutgren in 1991. That was a case that relied upon the commission in the electronics devices case. Those were necklaces that glowed in the dark, and one of the asserted method claims was activating the necklace so that it would glow in the dark. One of my problems is that the commission really didn't analyze 337. It simply said there was direct infringement and there was inducement, but how do you deal with the point that there was not an article that infringed a patent? This is a method patent, and the article was imported, but you don't infringe a method patent except by use of the article, and that occurred after importation. The commission didn't analyze the statute. I have two responses to that, your honor. One of them relates to a question by Judge Toronto to my opponent earlier about whether in colloquial patent speak, I think was the term that was used. Patent talk. Patent talk. Do we speak of articles used to infringe method claims as infringing articles? Mr. Cheney, I used to write patent claims, and people who write patent claims and analyze patent issues are very precise. You don't infringe a patent on an article or a product or a composition of matter unless the claim reads on the item. This is a method patent, and patent people do not use language with imprecision. I'm sorry. I didn't mean to imply that we could get by with imprecise language. I do recognize, your honor, that a claim to a method means that the invention is the process, and the test for infringement is whether use of the invention is proven by every step of the process being carried out. The commission does not disagree. And the statute doesn't deal with that. Statute deals with an article. An article that infringes, and an article infringes only if there's a claim to the article, and this is a method patent. Well, the question becomes, where we have an American inventor, or any inventor that is protected by an American patent, can there be an unfair trade practice based on the importation of articles that infringes on the rights of that inventor? And there can be, and the commission has repeatedly recognized that there can be. We're doing a statutory interpretation here. The amendments in 1988 were meant to move away from the pure unfair practices jurisdiction of the ITC. It changed it. It broadened its jurisdiction in some ways, and it made it very clear what its jurisdiction was. So the statute itself says, articles that infringe. It speaks in the present tense. The commission specifically addressed that language and said, the articles must infringe at the time of importation. Is the commission backing off of its own interpretation of that? Certainly not. And I hope I can explain this temporal argument that I think is very central to this appeal. My opponent, I think, imagines that the adjudication of this case occurred at the time that the first scanner was imported and sitting on a dock in the United States, before any other subsequent acts had occurred. But that's not why the commission instituted the investigation. The commission instituted an investigation based on a complaint, a very detailed complaint, that scanners were coming into the United States that were being used to directly infringe a method, something to which an inventor had a right in the United States. And this trade practice was infringing on that inventor's right. But the commission already had a ruling on the books that said, we don't do direct infringement of method claims, right? So the commission was very mindful that Section 337 cannot extend the patent laws of the United States. And so the commission was not going to call something infringement that, as Judge Lurie recognized, a district court would not call infringement. So, for example, selling an article that may be used to perform a method is not infringement. However, selling an article that may be used to perform a method with the intent that someone infringed someone else's method claim, that is infringement. And when that occurs, the article used in that process is an infringing article. After importation. It would be no different in a district court case. It would be no defense for someone accused of inducement of infringement to come before the court and say, I'm not liable because when I pulled this article to party X, no infringement had occurred. So you can't hold me liable. That's not how those cases are adjudicated. This case was not brought before the direct infringement happened. This case was brought after the direct infringement. By looking at the article, whether there will be infringement or not. Some of the imports may ultimately infringe, and some not. So you can't tell by looking at the article, right? Correct. Which is an enforcement issue that the commission has encountered again and again. The Field Air case addresses this very issue. And what you've done in this exclusion order is cover every piece of hardware imported by Suprema, regardless of what's going to happen to it, right? No. No? No. The commission's order is specific to Suprema and Mentolix and their products. But it says that Suprema can't import this hardware, right? It blocks all the scanners. It blocks the scanners. It doesn't say you can't sell to Mentolix. It says you can't bring these scanners into the United States. And it has a carve-out. If Suprema can show that you can... Not really. If you look at the language, it's quite an exciting paragraph. It uses the word discretion twice and may several times. I read it, and maybe I'm wrong, that it's completely within the discretion, which I assume is unreviewable discretion, of the Border Patrol agent under procedures it establishes. I don't know what those procedures are. Perhaps they're written somewhere, to decide whether or not it wants to certify or not. So, am I misreading it, that the border agent has the complete discretion to say, I don't want to certify, forget it? The discretion to allow certification is within customs... And that's unreviewable. Unreviewable discretion. But any importer... Am I right, that's unreviewable discretion? I'm not a customs lawyer, so I'm not sure. But what I do know about customs law is that any importer that has goods turned away at the border has a course of action. They can file a customs protest that can be resolved either at customs... But you told us before, you referred to the fact that it's just comparable to district courts. And I think one of the arguments made by the amici on your side is that the commission... Assuming we find the statute ambiguous, the commission's construction is reasonable, because this is something district courts do. Well, district courts, as you well know, we've got an Article III judge. He decides the remedy and he enforces it in an adversarial posture. His decision, her decision is reviewable by three of us, maybe under abuse of discretion. And I'm having a hard time seeing how the commission's implementation of this is reasonable, given we're looking at what I perceive as unreviewable discretion by a border patrol agent. And even if he exercises the discretion to allow certification, he or she gets to decide whether to certify. And it also concludes by saying they may require persons who provided the certification to furnish records or analysis necessary to substantiate the certification. Does that include legal arguments, or is that purely factual? It does include legal arguments. So the border patrol person is going to unreviewably review legal arguments made by the parties with regard to contributory infringement, inducement, etc.? Is that the way the system works? Can't the importer bring an A action in the Court of International Trade? Absolutely. There is complete judicial review for any good excluded at the U.S. border. And I think I know that the Court of International Trade is reviewable by this board. It is. Your Honor, I do know that Customs employs patent attorneys, and there's one sitting in the courtroom today that works with importers to adjudicate these issues. Do you look for parallels into what a district court could do? But a district court in these circumstances couldn't enjoin all imports of the scanners, right? It could only enjoin imports of scanners that would be used to infringe. A district court would have broad discretion to fashion a remedy to remedy whatever was found to violate. It may be that that remedy would need to exclude all scanners because the importer has a proven mens rea, that they're going to do this again and again. But you conceded before that a district court cannot enforce an action for induced infringement until direct infringement has occurred. Correct. And neither would the Commission find violations. So how could you say a district court could say, well, you've done it in the past, I think you're going to do it again? A district court couldn't do that. District courts, I'm aware of district court cases, one escapes me, the name of it right now, but where they enter injunctions, for example, saying you can't sell this product with these instructions, or you can't sell this product. The question is whether they can enjoin all scanners because some of them might be used in an infringing manner. And if that's the court's concern here, the appropriate response for the court is not to redefine what a violation of Section 337 may encompass, but rather to remand to the Commission with further instructions to fashion an appropriate remedy. Don't you think it's important that 337 uses the phrase articles that infringe? It has omitted concepts of use from it that 271A has. And then when you turn to 271B, it doesn't say that your bad thoughts or your bad inducements are infringing acts. It says it creates a fiction and says once there's direct infringement, you will be treated as an infringer. That's very different than articles that infringe, isn't it? I think the intent of the drafters of 271B is clear, that those who induce infringement are infringers. Judge Rich specifically addresses that phrase, and he says there was no intent for any different kind of liability but to hold inducers as infringers. So I don't see a distinction there. I also know that there are all kinds of unfair trade practices that involve intent, and they are adjudicated all the time. Criminal elements, as Judge Wallach pointed to, are adjudicated with intent by customs. You could have tortious interference of business relations through an importing trade. That would require an intent element. So I don't see the mere fact that there is an intent element of this unfair trade practice to be per se outside the scope of 337. More importantly, I think that Congress understood that any trade practice that infringed upon the right of a patent holder through importation, where there's sufficient proof of that infringement, should be remedial under Section 337. Let's go back to the discussion regarding the enforcement aspects of 337. Isn't it the case that in the finding of any exclusion, whether it's a limited or a general exclusion, that protests will develop, and people will fight the exclusion order, and there is a legal process by which to follow that protest? Now, it's not the case that these type of protests arise only in the instance of an induced infringement, correct? That is correct. Customs handles all kinds of protests. I want to mention a couple of other factual things. Before you do that, let me also point out that the person who decides this case is not a border agent, someone who is trying to keep undocumented workers from entering. It's a customs specialist. And aren't these specialists experts in the particular product that they're looking at and having to deal with? Yes, customs has established what they call centers for excellence that have labs and testing for different kinds of electronic devices, different kinds of pharmaceuticals. They have spectrographs to inspect chemicals. They employ engineers. They have patent attorneys. So there is a whole system for enforcement that plays here. They consult with the commission if they have questions about the scope of an order. So this process for issuing exclusionary orders, that goes all the way back to the origins of 337. That's correct. And in this case, Your Honor, the commission gets a letter from customs if a shipment is turned away based on our exclusion order. No shipments in three years that this order has been in place have been turned away. No one has tried to import a scanner for non-infringing use and been turned away. It hasn't happened. The other point I would make in terms of enforcement, if the appellant has a problem with the scope of the order, it can come to the commission. It can get an advisory opinion to say that this activity that we want to engage in is beyond the scope of the order. It can get a modification of the order based on certain circumstances. But the scope of the order was debated at the original panel level, and the commission defended the scope of the order and said we're allowed to exclude everything. The commission... So it's not like the commission was open to that analysis or that discussion. I respectfully... Those regulations have long been in existence in the commission's rules. Many appellants, many respondents take advantage of them every day. There are currently cases pending in the commission asking for advice on the scope of our orders. So let me give you a hypothetical. Suppose somebody imports 1,000 bicycles, and the bicycles themselves don't infringe. But they could be combined with a particular kind of tire that would make the item infringing, and that will depend on what happens at the time of the purchase. Does the commission claim that under those circumstances, it could have an exclusion order with respect to all the bicycles? No, because the commission... If the commission were to do that, the commission would be extending the patent law because the scenario that you described would not constitute infringement. Someone selling a bicycle that's capable of substantial non-infringing use is not infringement. But if the bicycle... But that's true here. That's the problem. The difference here is intent, Your Honor. There's an intent and a collaboration supported by substantial evidence that Suprema and Mentalist worked together to create an FBI-composed... In my hypothetical, it was an intent to tell some people that they could combine the bicycle with the tires that would render the whole thing infringing. Then you could exclude all the bicycles? You could exclude the bicycles from that importer, the one that had the intent to cause the infringement. Cause the infringement, even though that happens in some small number of cases. If the bicycle seller intends that, and I don't think that's different. Even though it's a small number of cases. You could exclude all the bicycles. If that's what the... Because the bicycle seller intends to infringe someone's patent rights, and when that occurs, there is liability under Section 271. And the bicycle seller can then come back in and show non-infringing use, can it not? Yes, or the bicycle seller could put a label on his bike saying, don't use this bike with these tires. And I'm not a customs patent attorney, but I imagine that a customs patent attorney is going to find that persuasive evidence that you don't intend that bicycle to be used with those tires. I believe you were saying there's a certification process, right? Yes, there is. So, if you were to write a permanent certification here, or be able to continue importing these scanners, what would that certification say? It would say, we are importing these scanners for sale to parties other than mental aids. That would be one way that it would be outside the scope of our order. Or we are importing this for sale for use of some function that didn't cover the method steps of Claim 19. I want to clarify for Judge Dyke that in the record of A200313, it states that all Suprema scanners filled by mental aids have the infringing software. Every single one. What is the Commission's view about electronic transmissions? Are those imports in the sense that, let's say there's a party in Canada, and it's transmitting to 5,000 different individuals in the United States some software. And then once that software gets loaded onto a computer, let's say for a moment that that's patent eligible, and let's assume for the moment that that causes a direct infringement. Would the Commission go after that electronic transmitter, or that person that's transmitting the software from Canada to the United States? I assume customs wouldn't have a role in releasing that. I suspect Your Honor is referring to another case that's pending before this court. I'm just asking a hypothetical. So, to the extent that it relates to this case, the Commission is not going to interpret its statute in a way that would extend the patent law to the United States. And I'm not sure that I can say more than that. I think that that case that is very close to your hypothetical is probably better addressed in the briefing of another Commission attorney that is dedicated to that case. We'll get an answer then? I assure you, we will have an answer. Well, to little fault of your own, you've grossly exceeded your allotted time. We're 10 minutes over, and we do want to hear, though, from Mr. Grant and Mr. Freeman. So, we'll start your clock with the previously allotted 12 minutes, but hope that in the absence of questions, you'll give back some time. Thank you. It may please the Court that the exclusion order in this case doesn't cover all scanners. It covers all infringing scanners, and the distinction between the two would be no different than if an exclusion order was issued to a category of products and one person got a license and another didn't. But there are no infringing scanners. There isn't a claim to the scanner, isn't that right? Well, Your Honor, your point is a good one, but it proves too much. If method claims are not actionable under Section 337, and if we strictly apply the phrase, articles that infringe, to Section 271, there is no liability for any infringement. But we have to read the statute. And besides, you could still make limits. We do read the statute, Your Honor, and the question is what is meant by articles that infringe. The Suprema's argument proves too much. If that's merely limited to a specific device that's infringing in and of itself, I would fear that not only does it not comply with 271B, it doesn't comply with 271C, and it doesn't even comply with 271A, which attaches liability to persons. So what the Commission has done here in effecting the congressional purpose of this statute was in translating what articles that infringe means to attach a sort of liability that's appropriately implemented by Section 271. Don't you think it was interesting that neither the parties, before the ALJ, nor the ALJ, thought that this theory of infringement liability was a viable one under 337. The ALJ specifically found that mentalics directly infringed and tried to use the old, now discarded, nexus theory to impose liability. Then the Commission came up with this idea of induced infringement on its own. So neither the parties nor the ALJ thought this was a viable approach. I'm not sure I agree with that, but in any case, this Court's sitting in review of the Commission's opinion and not the arguments that were necessarily made below. But it does tell you something about whether or not this was a well-established, permanently entrenched concept. I disagree, Your Honor. To the extent the Court is saying that certain electronic devices clarify the nexus rule, I'm saying what certain electronic devices made clear was that whatever nexus attaches or is appropriate for liability under induced infringement, that nexus, the nexus that's statutorily defined by 271, is the nexus that matters and not some different nexus that the IPC may come up. So the way to read it... Well, and it says, the Commission said, that nexus has to be at the time of importation. No, no, it says the status of the article at the time of importation. But it also goes on to say that the statutorily defined theories of indirect infringement appropriately reach activities without resorting to the concept of nexus. That comes from that opinion. But that comes from a footnote, where what they were talking about, they specifically were talking about contrived. But they expressly said, they may have been talking about contrived, but they were also talking about induced infringement. And they specifically say, articles that infringe is a reference to status at the time of importation. Thus, the infringement, be it direct or indirect, must be based on... They refer to the concept of indirect, but then they specifically talk about articles that relate to whether or not they have substantial non-infringing uses or not. And they specifically say, where there's no substantial non-infringing uses, that that kind of indirect infringement can meet this test of at the time of importation. I respectfully disagree, Your Honor. Just like the Supreme Court said in Groxer, in the context of copyright, it's not just the importation itself. It's distribution of a tool that's intended for importing use. And if it's the case that we're defining articles that infringe in this enormously narrow manner, then there's no way to logically distinguish contributory infringement. There's no way to logically distinguish... In the sense that in the contributory infringement situation, where there are no substantial non-infringing uses, you can tell that from looking at the article. And what you're saying here is that the commission has the authority to enter an exclusion order by looking to conduct beyond the article that's imported. That's absolutely the case, Your Honor. It would be no different if some articles were licensed and some articles weren't. The ones that are licensed aren't infringing and aren't importable. And that kind of distinguishing between the two that the customs make has nothing to do with violation and everything to do with remedy. And I want to answer your question, Your Honor, because you have a... But this seems to me rather broad in the sense that if the article may be put to an infringing use after it's imported, the commission is saying, well, in all of those cases, even though the article itself may or may not infringe, we can grant a remedy, right? That's not true, Your Honor. The exclusion order is limited to infringing articles. And in this particular case, in fact, in this case, the record will show the percentage of imported articles that went to Mentolix and were used for infringing use was in excess of 95%. So the vast majority of importation occurred... The ones that went to Mentolix, not the ones that went to everybody else. Well, the everybody else... The evidence is also clear that Mentolix was a small percentage of the sales. That's incorrect, Your Honor. That's incorrect, Your Honor. Mentolix was the vast majority in excess of 95% of the supreme scanners that were imported into the United States. And those other ones were the small fries by comparison. So in this case, it was the vast majority. And in essence, the concerns here about remedy distinct from violation are concerns that are appropriately delegated to the Commission for Enforcement. And what the commission attorney, my brother, said faithfully was that the way these things actually work is they're self-enforcing. There has been no apparent demand for importation of non-infringing versions of the software. Would it make a difference if the imports to Mentolix were 1%? No, Your Honor, I don't think it would make a difference. So the commission can... Even though 99% of the imports are non-infringing, they can bar the imports because 1% of them might be used in an infringing manner. No, not might be used. They're only barring the ones that will be used. And as a practical matter, the way that's handled is through the actual handling of the certifications that are done. It would be no different, Your Honor, than if somebody sued 10 respondents, got a finding of infringement, and got an exclusion order. Then 99 of them took licenses. That exclusion order still applies and is still applied faithfully by the Covenants Bureau to the remaining ones that remain infringing. And the 90% that aren't would successfully come into this country subject to a certification. And I would submit, Your Honor, that the culpable intent that's associated with 271B should make it more inclined to be enforced in these circumstances, not less. You rely heavily on Chevron. Tell me what you describe the ambiguity to be and where you think the ambiguity arises. Sure, Your Honor. To the extent the court believes that articles that infringe isn't a reference to the definition of infringement that's found in 271A, B, and C, I believe it's not ambiguous. But to the extent the court doesn't believe that articles that infringe means any type of infringement that's associated and described in 271A, B, and C, then that's what's ambiguous. Wait a minute. So you're saying if the court disagrees with you, that's an ambiguity? Well, Your Honor, I think the court would be disagreeing with itself. So the court in, for example, Lucent Technologies, talking about products associated with induced infringement, called them the infringing software products. In Power Integrations, this court called it the portion of infringing products not imported in the United States. In Laser Dynamics, they talk about the infringement. Let's come back to my question because it's really important. Sure. Because the government brief tries a little bit to explain where the ambiguity comes from. But nowhere else does anyone – you just say it's ambiguous because we don't agree. That's not an ambiguity. So tell me where the ambiguity is. I disagree, Your Honor. The ambiguity, to the extent it arises from anywhere, arises from the interpretation, which I would submit is an erroneous interpretation of articles that infringe. The way that that statute has been interpreted for all time prior to 1988 was that precisely these kinds of acts of induced infringement are subject to a remedy. And the 1988 amendments were not intended to do anything other than strengthen that by replacing the finding of injury for statutory intellectual property. So the answer to my question is the ambiguity is that we don't agree with you or that the panel doesn't agree with you. I don't think that's the correct way to characterize it, Your Honor. I think the statute is clear on its face, and to the extent it's not clear on its face, the commission's interpretation of any perceived ambiguity is reasonable. So to cut through all of the debate, you're telling us that if it's feasible to select and implement a remedy for established infringement, then that really is what one looks for in the statute? I'm not sure if I understand the court's question. The interpretation that was applied or that's advocated by Suprema for articles that infringe would exclude not merely induced infringement. It would exclude contributing for infringement. It would exclude infringement of method claims, and it would arguably not cover the exclusion of an apparatus that's coming across the border because there is no infringement of the apparatus. The apparatus arises from someone who sells or imports it. So there is no article that infringed strictly defined under 271B or A or C. A remedy for future inducement or whatever else might be involved. That if it is feasible to determine whether there is induced infringement, whether there is ultimate infringement after importation, that that really is what one needs to look for in order to determine whether there might be exclusion or whether the patentee might need to look elsewhere. If I understand the court's question to the extent the question is just about whether it's practical and forcible, that's a separate question than the one that's before the court at the moment. The question now is whether induced infringement constitutes a violation. The perspective question about whether an exclusion order is appropriately enforceable, etc., is not the issue that's precisely before the court, and certainly seems to me like one where the commission is due ample discretion in its actual implementation of the remedies that Congress has given it in order to enforce the intent of Section 337. Mr. Grant, I think at one point earlier you were making a distinction between a violation statute and a remedy statute. Is 337 a remedy statute, or is it a violation liability statute? Well, 337 defines what constitutes a violation, and this question and debate that we're having today has to do with whether induced infringement satisfies a professional violation. So part of the trouble I'm having with your position is that we are looking to pass acts of direct infringement that have been induced by Suprema to conclude that Suprema's scanners that are being imported today, that arrive, say, today, are acts of induced infringement. Well, did you understand my... Let me see if I can get at it, Your Honor. The entire remedy of Section 337, not dissimilar from an injunction, is a prospective remedy. So by definition, we have to be attempting to stop culpable conduct that occurs in the future. But I don't think that... But that's a remedy statute, or a form of statutory relief, and you were saying that 337 is really more about liability. If I understand the Court's question, so then let me see if I can formulate it. So Section A of Section 337 has to do with unfair trade acts. Section B of Section 337 has to do with violations based on statutory intellectual property rights. And what that said was that for statutory intellectual property rights, we're going to strengthen the existing protections, we're not going to make you show remedy, because effectively, by violating a statutory intellectual property right, we can assume injury, and that's precisely the case here. That part of the statute has to do with defining the violation. I believe that that phrase, articles that infringe, was intended to be at least coextensive, if not broader, than the definition of violation that's found in 271A, B, and C. Indeed, in order to determine whether an article infringes, we have to look at the statute, the Patent Act, and determine that. Now, the remaining portions of Section 337 have to do with the remedy and the remedial intent of Congress in terms of the remedies that are available, but it's a totally distinction between an impersonum, not just remedy, but an impersonum way to address who's infringing. It's defined by a person. But the Supreme Court said in Akamai that the infringement occurs when direct infringement occurs. You have to have direct infringement before you can have induced infringement, and in this particular case, if it's true that all of these scanners, or a good portion of these scanners are being sold to mentalists, there is a district court remedy. Now, I know you say that somehow district courts are not good enough, but there is a district court remedy that could bar mentalists from using any of those scanners or from purchasing any of those. But that remedy is an important different one, and Congress intended to provide this remedy to patent holders in the United States. So, for example, while an injunction could issue against Suprema to the extent Suprema sent those scanners to an independent third-party distributor, they could come in that way. And to be clear, Suprema has no U.S. affiliate. There's no U.S. entity that's directly affiliated with Suprema. And indeed, part of the benefit, the practical benefit of Section 337 in this action had to do with the fact that we had in-rem jurisdiction. And we were able to... It doesn't matter if someone does accrue a third-party entity if the people they're selling it to are not allowed to use it, right? But the exact same thing, so that the injunction issues against mentalists and Suprema can merely provide those same scanners to a separate distributor in the United States. And the entire purpose of this statute was intended to be able to stop that at the border in an effective way. The Commission's opinion faithfully applies the text of Section 337 to implement Congress's intention to stop at the border all forms of infringement, not just some forms, including inducement. The opinion should be affirmed. When you say, I'm sorry, when you say all forms of 271A or 271 infringement, you're referring to A to their G? 271A and 271B, too. Correct. And 271G, for example... What about 271G? So 271G was actually covered by the Act before 271G existed. And so when Congress added 271G to the Patent Act, that occurred about four years after that same prohibition was applied in Section 337. So to the extent that there's this question about whether the Patent Act and the Trade Act... But in itself, the court rejected that. That's why Congress amended the statute. The Congress amended the statute because after affirming it several times, then the court reversed itself. And what Congress said was that was an improper interpretation of the statute. No, it didn't. It amended the statute. It might not have. The Supreme Court says there's a gap in the statute. That's the way it's supposed to work. There's a gap in the statute, so Congress goes in and amends the statute. The legislative history expressly said that the amendment came about because the court reversed itself, changing its prior rulings. That's what's set forth in the statute. Okay. Thank you. We're now about 14 minutes over, but we're going to give you your five minutes and we're able to subsidize Mr. Wu if he needs it to keep the time even. Thank you, Madam Chief Judge. May it please the court, I'm Mark Freeman for the United States. We appreciate the chance to address the court this morning, and if my time could be given back, if there are no further questions, I'd be glad to give it up. I just want to address. I have a question for you. So putting aside the context of this amendment, the legislative history, all of that, if Congress had wanted to amend the statute to focus specifically on articles of court, to keep it in line with kind of anti-adoption kind of religion duty things where they exclude or put a tariff on goods that violate those orders, what language other than articles that infringe would it have used? Well, if I understand the question correctly, because Section 337 is an in rem proceeding, you have to speak in terms of the articles. It wouldn't make sense to address just intellectual property infringement by speaking in terms of the conduct. And that is why this statute is ambiguous. That is why it was necessary for the commission to apply its interpretive judgment. I guess what I'm getting at is if Congress had a different intent, and I understand you have arguments for the contrary, but if Congress really had intended only to exclude articles, to limit it basically to direct infringement, wouldn't articles that infringe be the language they used? No, in fact, this is not what we made in our brief, and it may be a little bit to follow an oral argument, but I think there's a textual basis to conclude that Congress is exactly the opposite of that, Your Honor. In 337A1B1 and 2, B1 says articles that infringe. B2 is the provision from the 1940s that parallels the 271G. If you look at the language of that provision, it says products made overseas by processes that are, quote, covered by the claims of a United States patent, a valid and enforceable United States patent. Now, covered by the claims of, unambiguously means direct infringement. It would be from other wests. Congress had that language in front of it when it was writing 337A1B1, and if they had meant to say direct infringement only, they could have simply said articles that are covered by the claims of a valid and enforceable United States patent. Is that different, articles that infringe in that particular definition? No. What is the difference between articles that infringe and what you've posited? Well, when Congress uses different language, we assume they meant something different by it, and infringe is, of course, defined in 271. That is, the caption of Section 271 is infringement of patents, and it is not just A, but B and C as well. Doesn't the use of the word article suggest that you can determine the infringement by looking at the article, rather than looking at the article and combining it with some other conduct by the importer that's outside of the importation? Your Honor, I think the answer to that is no, and let me explain because I agree with you that it's an important point. I think it is commonplace under Section 337 that the Commission, in order to determine whether there's been a violation, has to look outside of the article itself. Take, for example, the provision I just mentioned, products made overseas pursuant to a patent, the process patented in the United States. That's specific in the statute. But again, Your Honor, this court in the Sealed Air case talked about this. Whether the product coming across the border was made pursuant to a process patented in the United States or not will be impossible to determine from looking at that product itself. That's why 271G reversed the burden of proof, put the burden on the importer to prove otherwise. In district court cases, that's correct. It's not difficult to think of other circumstances where this would be true. I'm not talking about the glance of the article and you can tell whether it's infringing. What I'm saying is, doesn't it suggest that an examination of the article or a testing of the article or a look at the history of the article suggests that it's going to be an infringement? Without looking for intent or actions by the importer apart from the importation, that somehow would create an infringement. Well, sure. I think, frankly, once the court acknowledges you have to look at the history of the article, that's not written on the article. So we're already looking outside of the thing in front of the customs official. But even as to intent, take business tort, take antitrust violations, take passing off. The commission has to determine intent. And to your question earlier about the scope of the exclusion order in this case, paragraph one of the exclusion order defines the articles that are excluded as the article that infringed. So a sale by the PREMA to Mark Freeman Associates does not infringe because they've not been found who have engaged in an intentional scheme to induce direct infringement by me. The final point I'd like to make is simply that article that infringes has no meaning under section 271. And Congress intended the commission in the first instance to ascribe conduct from the patent laws to the article. It had to do that. It was the commission's judgment in the first instance about how to do that and the only question ought to be whether it was reasonable of them to conclude that what Congress meant was articles that infringe are those for which liability could be imposed under the patent. Mr. Freeman, I have a question. On page 17 of your brief, you cite the same three cases that one of your colleagues recited. That's a speculative reading from me. They're all relatively recent. I'm pretty focused on the question whether this non-271 precise phrase, articles that infringe or infringing articles, had any history of usage that covered the kind of thing at issue here which as a shorthand, let's call it a staple article with respect to a method claim. I think you understand the shorthand. I do understand the shorthand, Your Honor. I guess what I have to say is the question ought to be whether it was unreasonable of the commission to think that we could ascribe to the articles the intent of a person who as an importer is part of an infringing scheme. No one doubts that in a district court you can go after an importer for intending to induce infringement of a United States method patent and that in that sort of circumstance, the district court can impose an injunction if they found the inducement against the importation and calculate remedies. We would talk, as we did in the cases that Your Honor mentioned, about how much per infringing article. That would be a perfectly reasonable and linguistically natural way to speak of it. And I think that linguistically reasonable, I think the relevance of the cases that you mentioned is only that the commission's conclusion here is consistent with the ordinary way in which we use the English language. None of those earlier cases involved a finding of infringement based on inducement except where the article had no substantial non-infringing uses or it was imported with instructions to infringe. Your Honor, I don't see a principle difference. If we conclude... But is my statement about the cases correct? I believe that is correct to my knowledge, but once one acknowledges that the importation of an article with instructions written on it about how to use it to infringe is inducement, of course that's how we would deal with it in a district court. And if the commission can remedy that, then there's nothing in the statute. That means the commission has properly construed an article that infringes. But in terms of drawing on historical practice, what the commission has done here is something... And I think the relevance of the historical practice is only a let's not miss the forest for the trees point. If we just back up here, the express purpose of the 1988 legislation, and it's not statutory history, legislative history. This is in the statute itself. We reproduced in our brief at page 8. The patent law is all about trees, not forest. The patent law requires precision. Your Honor, I think that the Supreme Court would say that statutory interpretation is about forest and not trees. And there's no way to read 337A1B1 consistent with the express findings of Congress reproduced at page 8 of our brief and come to the conclusion that the appellate's advocating. Thank you. Thank you. Mr. Wu. So we're about 17 minutes ahead. I guess I'm a chief judge in training. I guess my experiment on self-regulation did not work out. In any event, we will add that on to your time, and hopefully if there are no questions, that will not be necessary. So please proceed. Thank you, Your Honor. I'm not quite sure where to begin. It seems to me that I've heard a lot of things that trouble me greatly. One is appellee's insistence that there be some deference owed the commission in this instance. And I keep not hearing the first step of that deference. The first step of that deference is that the statute has to be ambiguous on its face. And you only give deference to the agency if that's the situation. And this court is unable to use standard tools of statutory construction to construe the statute. Well, on that point, maybe you can respond a little to Judge Lee's question to Mr. Freeman, which is, Mr. Freeman responded, if Congress had really intended to limit it to articles that infringe, how would they have set it? What is your view of that? Is there another way they would have set it, other than the way they set it, i.e. articles that infringe? I can't think of any, Your Honor. Articles that infringe are just that. I mean, they're tangible things that infringe a patent under the statute. Doesn't that mean that Congress left it to the discretion of the commission to determine what articles it infringes? No, Your Honor. It meant that the courts can construe that statute just like the commission can. There is no prior commission determination to which to give deference, because the commission has not interpreted articles that infringe in the context of a staple article in an inducement context. Every decision that they cite to has been in the context of either the pre-'88 version of the statute or with the now discarded statute. Well, it's interpreted to mean that you can bring an inducement action under 337. I'm not ruling out inducement actions under 337 categorically, because if they involve an article that infringes, then I think, yes, it falls within statutory scope. Let me limit my statement to involving method claims. Well, method claims have always been treated differently by the law. And the latest pronouncements hold that method claims are not infringed until they're actually performed. And if that performance is not done by the article or done until it's in the United States, then it's not something that's within the scope of 337. The other point I wanted to raise, and it's I can't think of any, Your Honor. In response to Mr. Granson and the cross-measures position that 337 includes all of 271, including G, that runs counter to the statutory language of 337. 337 itself, in A1B2, specifically addresses 271G liability. It prohibits the importation of articles that are made, and I'm paraphrasing, by means of a process covered by the claims of a United States patent. And that's what 271G covers. If 337A1B1 were read to be inclusive of all of 271 as they contend, then B2 would be surplus, which would be not necessary. So that is another reason why their construction is incorrect. And Mr. Chaney made reference to the fact that no standards have been turned away by customs since this decision has come down. Well, that's not before this court, among other things. It's not part of the record. But even if it were true, it's also inconsistent with the fact that, as you might expect, my client may be afraid to import something where the order says you cannot import devices that infringe Claim 19. And you can see the confusion there, because the devices already have been determined not to infringe Claim 19. There is a certification procedure that you can employ where you certify that these products are not excludable products. But how do you do that when you can't know what's going to be done with them? The process, in effect, if you read it the way the commission wants to read it, requires that my client, the Suprema client, has to investigate every instance of their purchaser's conduct. And in this case, it might be possible if there are a handful. But what if we're talking about a consumer good that's sold on a shelf? You sell a staple article on a shelf, you don't know whether somebody is going to use it in an infringing manner or not. That's why the district courts talk about enjoining the conduct of inducement, but not enjoining the sale of the staple article. And what the commission wants to do is to expand beyond what the district courts can do under 271B, and exclude articles that are not infringing, that are staple articles, that have substantial non-infringing uses by their own admission. You wouldn't draw any line when we're saying that 95% are, in fact, used under the patent. You think that that should be treated the same way as if it were 5%? I don't think that the numbers situation, Your Honor, at all is a situation of- We're always drawing lines with numbers. I mean, there are differences. It's the basis of the law. You try and see where the lines, where the differences, where the balance shifts. But you're telling us that that's inappropriate. Well, it's only inappropriate in this instance because statute doesn't draw that distinction. It draws the distinction. Well, that's why we're here. Perhaps it should. Well, I guess what I'm suggesting, Your Honor, is that because the statutory language does not draw that distinction, it's not something that we should consider. It may be something that you might think about as a policy consideration. But it's not something that's drawn to the statute itself. The statute itself is very clear that- What way is that? Because you leave it up to the commission's discretion to determine that type of decision making? As to whether or not the percentage of products are going to a- are being combined in a way? Well, we ought to actually- that, of course, assumes that they are being combined in a way in which we haven't really touched on. The- there's another facet of our appeal, which is that the statute- or excuse me, the patent is not infringed at all. Claim 19 is very clear that it requires area detection and shape detection, neither of which is supported by the evidence in the case. There's no evidence that any shape detection- I asked you before, and this is- now we've heard a lot of arguments, but I asked you, is there anyone in 337 that defines articles that infringe? Is there anything in the Patent Act that defines articles that infringe in this context? And your answer before was no. I'm assuming it's still no. My question is, what's this entire argument about? Is it not that we're seeking to define what articles that infringe means? And isn't that- doesn't that mean that what we're dealing here- what we have here is an ambiguity? We don't know what it means, and this court has been called en banc to determine what articles that infringe means. Start at the beginning of your question, Your Honor. The words, articles that infringe, does not- those words are not found in 271. But the only way to read it correctly is to determine what are articles that infringe. But we've already departed from the words- from the face of the statute. I mean, we've already- so if what I hear you saying correct is that we've answered the first step of Chevron, isn't it time to move to the second step and ask, is the ITC's determination in this case reasonable? Is its interpretation of the statute a reasonable interpretation? And it is not a reasonable interpretation, and I don't think we've moved beyond the first step because it's only where a statute is ambiguous and by definition under Chevron. That means that applying standard tools of statutory construction to the courts cannot- No, it means whether the statute answers directly the question that's before us. The statute, like I said at the beginning, Your Honor, it's common for statutes not to define every single term within- In applying Chevron, that is what we look at. I mean, we're faced with this issue all the time in this court in interpreting statutes. And when the first step is to look at the statute and say, does the statute answer the question that's before us? Here, we've been jumping from one act to another. We've discussed legislative purpose. We've discussed legislative history. Isn't it time to move on to the second step, and that's whether the ITC's interpretation of the statute is a reasonable one or not? And I think not. But to answer the question of whether it's reasonable, it is not a reasonable construction because it reads out the phrase value for a replacement. I suppose, isn't there another way of looking at this? Instead of going to 271, let's go to unfair trade acts. ITC has determined that induced infringement under 337 is an unfair trade act. Is that an unreasonable interpretation? I'm sorry, that 337 is an unfair trade act? That an infringement that's been caused by inducement under 337 is an unfair trade act. That is specifically set out in the statutory language of A1B. If anything, I mean, when you look at the statute, it says unfair trade act. Then it goes on to say what those acts are. So isn't another way of looking at this question is to look at the act itself and to say, could not the ITC reasonably determine that the definition of articles that infringe constitute an unfair trade act? It's not a reasonable construction for the commission to look at the words articles that infringe when those words and that part of the statute that deals with patent infringement is specifically set out differently or separately from the general section that talks about unfair trade acts and talks specifically about articles that infringe and reading out the part that says that infringes. But that's an unreasonable reading of the statute. The nothing in legislative history, nothing in the 271 statute or 337 statute says that you should transform a staple article as it is imported across the border into something that is an article that infringes merely because it is being used in connection with an alleged inducement. There are no cases on that, and there's no statutory authority or legislative authority for that. To sum up, Your Honor, there was no 337 violation of the Supremacy Act. It only imported staple articles and not articles that infringe. The only basis of liability was inducement, which is based purely on conduct and not headed to the importation of any infringing article. The commission itself determined that Suprema's products were staple articles by finding they did not infringe when combined with three or four other software programs. There is no basis to the authority of the commission's interpretation as including staple articles as having a nexus to inducement. In fact, I don't think that the commission has, in any of their cases, really articulated what they mean by articles that infringe. They've never really construed it, given a definition. And why? Because every time you think about extending it beyond the articles themselves, you're inextricably led to the nexus doctrine, which the commission itself says is inappropriate. The commission itself says you must, in determining whether or not there's been a 337 violation, you must satisfy all the statutory requirements of 337. That is not done when all you're doing is saying that there is a nexus to the alleged infringement. And even if the statutory languages were ambiguous, again, which I think it's not, the interpretation that reads out the phrase, that infringed, and converts this limiting phrase into one that is not only not limiting, but includes staple articles that are not infringing articles, it can't be a reasonable construction, given all the things. Council, under 271, an article itself cannot infringe, correct? An article, well, it is. The statute speaks to whoso, whomever, or whomever. There's an action, and then there's the object. Have you ever known of an article that can import itself? No, your honor, I don't. So somebody's got to do it. Somebody has to do it. And 337 is also written in terms of an action, and then an object upon which you are acting. The action, in this case, in 337, is about importing, sailing, sailing after importation, and so forth. And you're right. Articles don't import themselves. And I want to stress that there was no 337 violation as to mentalics. The only conduct that was claimed to infringe was the method claim of 19 that was the use of publicly available NIST software in conjunction with the staple article scanners. This was purely domestic conduct that is not within the reach of 337. I want to clarify that the scanners at issue here are attached to a PC like a printer. Nothing was added to the scanner. The software routines that are claimed to infringe run only on the computer. Any scanner could be attached to the PC, and that's why, in fact, there are staple articles and should not be included. And I thank you for the question. Thank you. We thank the court counsel and the case is submitted. That concludes our proceedings for this morning. All rise. Thank you.